Argued and submitted August 24, 2004, affirmed February 16, 2005

In the Matter of the Compensation of
Filbert M. Fimbres, Claimant.

Filbert M. FIMBRES,
*Petitioner,*

*v.*

SAIF CORPORATION,
*Respondent.*

99-01095, 99-01690; A122548

106 P3d 690

Robert F. Webber argued the cause for petitioner. With
him on the briefs was Black, Chapman, Webber, Stevens &
Petersen.

Jerome P. Larkin argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge,* and Wollheim, Judge, and Leeson, Judge pro tempore.

LEESON, J. pro tempore.

Wollheim, J., concurring.

---

* Edmonds, P. J., *vice* Deits, J. pro tempore.

**LEESON, J. pro tempore**

Claimant seeks judicial review of a decision of the Workers' Compensation Board order denying his claim for permanent total disability benefits (PTD) under ORS 656.206(1)(a). He contends that the board committed legal error by concluding that it should not consider claimant's preexisting degenerative disc disease in determining his entitlement to PTD benefits and that the board's finding that he was not permanently and totally disabled due to his compensable conditions and any preexisting disability is not supported by substantial evidence. We affirm.

Claimant, a hod carrier, injured his lower back on November 15, 1996, while lifting a scaffolding plank. At the time, he had preexisting degenerative disc disease that was not disabling and had not caused him to miss any work. SAIF accepted the claim as "lumbosacral strain," which it subsequently modified to include "foraminal stenosis." On July 21, 1998, SAIF amended its acceptance to indicate that claimant's injury had combined with his preexisting degenerative disc disease to cause disability but that, as of July 7, 1998, the strain and stenosis had ceased to be the major contributing cause of claimant's disability and need for treatment. SAIF therefore denied the compensability of claimant's combined condition and closed the claim.

Claimant requested a hearing. The board found that SAIF's acceptance of foraminal stenosis did not include the degenerative disc disease and held that claimant's preexisting degenerative disc disease was not compensable. This court affirmed without opinion. *Fimbres v. SAIF*, 173 Or App 446, 21 P3d 665 (2001) (*Fimbres I*).

On May 4, 1998, claimant's attending physician, Dr. Henderson, stated that, considering only the strain and stenosis, claimant was capable of light-duty work. However, Henderson also stated that, taking into account claimant's preexisting degenerative disc disease, which had worsened since 1996, claimant was unemployable at any job. On July 6, 1998, in response to an inquiry from SAIF, Henderson stated that the accepted strain and stenosis contributed 25 percent

of the cause of claimant's overall disability and that claimant's preexisting degenerative disc disease contributed the remaining 75 percent. Two SAIF medical examiners concurred with Henderson's assessment.

A determination order on August 18, 1998, awarded claimant 48 percent unscheduled permanent disability for the strain and stenosis. An order on reconsideration reduced the disability award to 36 percent. Claimant requested a hearing, at which he contended that he was entitled to PTD benefits. ORS 656.206 (1)(a) defines "permanent total disability" as

> "the loss, including preexisting *disability*, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation."

(Emphasis added.) The ALJ affirmed the order on reconsideration that reduced claimant's disability award to 36 percent, and claimant sought board review. Claimant argued that he was entitled to PTD benefits because his preexisting degenerative disc disease had become disabling since his 1996 compensable injury and that he was now totally disabled. The board rejected claimant's argument. Relying on our decision in *Elder v. Rosboro Lumber Co.*, 106 Or App 16, 18, 806 P2d 692 (1991), the board held that, "in order to consider a preexisting disability in determining whether a worker is permanently and totally disabled, the preexisting disability must be disabling at the time of the compensable injury." It found that the record does not establish that, before his 1996 injury, claimant had received treatment for his preexisting degenerative disc disease or that he had missed work because of that condition. The board also found that, were it not for his preexisting degenerative disc disease, claimant would be able to perform sedentary or light work. The board concluded that claimant had failed to establish his entitlement to PTD benefits.

■       On review, claimant contends that the board erred in holding that a preexisting disability must be disabling at the time of the compensable injury for it to be considered in determining whether a worker is permanently and totally

disabled. According to claimant, *Elder* stands for the proposition that a preexisting condition does not have to be disabling in order to be taken into account in determining whether a worker is permanently and totally disabled. SAIF responds that *Elder* expressly rejected the argument that a condition that was not disabling before the work injury should be considered a preexisting disability for the purposes or determining entitlement to PTD benefits.

In *Elder*, the claimant suffered a seizure disorder as a result of brain surgery in 1982. Neither the disorder nor the surgery was work-related. 106 Or App at 18. Two years later, the claimant suffered a compensable injury to his left knee and shoulder, for which he received an award of permanent partial disability and vocational services. *Id.* However, a subsequent seizure left the claimant significantly impaired on his left side, and he was unable to complete the training program in which he was enrolled. *Id.* The board and this court rejected the claimant's claim for PTD benefits. We reasoned that ORS 656.206

> "refers to a preexisting *disability*, not preexisting condition. The disabling effects, if any, of claimant's seizure condition that preexisted the injury must be taken into account in determining whether he is permanently and totally disabled. However, any disability that developed as a result of the condition after the injury, but not as a result of the employment, may not be considered."

*Id.* at 19 (emphasis in original). Claimant relies on the second sentence in that quotation for the proposition that the effects, if any, of a preexisting condition must be taken into account in determining a worker's entitlement to PTD benefits. Claimant misreads *Elder*. As the first sentence in the quotation makes clear, ORS 656.206 requires a preexisting *disability*, not merely a preexisting condition. There is no evidence in this record, and the board did not find, that claimant's preexisting degenerative disc disease caused "disabling effects"[1] before his 1996 compensable injury.

---

[1] In *Lecangdam v. SAIF*, 185 Or App 276, 282 n 4, 59 P3d 528 (2002), we noted that the ordinary meaning of "disability" includes a " 'physical or mental illness, injury, or condition that incapacitates in any way.' " (Quoting *Webster's Third New Int'l Dictionary* 642 (unabridged ed 1993).)

Henderson reported that claimant was capable of performing his regular work on the date of injury and that his preexisting lumbar degenerative condition had worsened in the two years since the injury. In *Fimbres I* we affirmed the board's finding that claimant's preexisting degenerative disc disease was not compensable. The third sentence in the quotation states unequivocally that the board may not consider any disability that develops as a result of a preexisting condition after the injury, but not as a result of the employment, in determining a worker's entitlement to PTD benefits.

■   Nonetheless, claimant argues, this case is controlled by *Waremart, Inc. v. White*, 85 Or App 122, 735 P2d 1262 (1987), because SAIF modified its initial acceptance of claimant's claim to include a combined condition. In *Waremart, Inc.*, the issue was whether the board may consider medical conditions that existed before the claimant's compensable injuries in determining the extent of the claimant's disability. *Id.* at 124. We held that the board could consider the conditions because the claimant's preexisting amyloidosis and peripheral neuropathy, which were unrelated to her work injury, had the "synergistic effect" of preventing her from recovering from her work injuries. *Id.* at 125-27.

*Waremart, Inc.*, does not aid claimant. First, claimant misapprehends the significance of SAIF's acceptance of a combined condition. This court has held that the acceptance of a combined condition is not an outright acceptance of a preexisting condition that has combined with a work-related injury. *Multifoods Speciality Distribution v. McAtee*, 164 Or App 654, 661, 993 P2d 174 (1999), *aff'd*, 333 Or 629, 43 P3d 1101 (2002). *Fimbres I* established that SAIF did not accept claimant's preexisting degenerative disc disease when it accepted foraminal stenosis. Second, as the *Elder* court explained, in *Waremart, Inc.*, the preexisting conditions were so intertwined with the claimant's compensable injury that it was impossible to separate the two in determining the extent of the claimant's disability. Contrary to claimant's assertion, that is not the situation here. Henderson and SAIF's physicians were able to separate claimant's preexisting condition from his compensable injury. They agreed that 25 percent of claimant's disability was attributable to his compensable injury, while 75 percent of his disability was attributable to

his preexisting degenerative disc disease, which became disabling only after the injury. Substantial evidence in the record supports the board's findings that claimant's preexisting condition was not so intertwined with the compensable condition that the preexisting condition should be considered in determining claimant's entitlement to PTD benefits and that, based solely on his compensable injury, claimant was not permanently totally disabled.

Affirmed.

**WOLLHEIM, J.,** concurring.

I concur with the well-reasoned majority opinion. However, if I were writing on a clean slate, I would interpret ORS 656.206(1)(a) as allowing preexisting conditions to be considered in determining whether an injured worker is permanently incapacitated from regularly performing work at a gainful and suitable occupation. ORS 656.206(1)(a). A single hypothetical demonstrates my point. Assume the injured worker is a 60-year-old carpenter with compensable injuries to his spine, knees, and hands that preclude physical labor. In theory, a possible gainful and suitable occupation might be a telephone solicitor. However, if this hypothetical injured worker also had preexisting hearing loss that did not prevent him from working as a carpenter, that preexisting hearing loss could not be considered in determining whether the injured worker is permanently totally disabled. The purpose of ORS 656.206(1)(a) is to look at the whole person and determine whether that whole person can regularly perform gainful and suitable work. But I do not write on a clean slate. For that reason, I concur with the majority opinion.